**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

WILMINGTON SAVINGS FUND SOCIETY,
FSB, as Owner Trustee of the Residential
Credit Opportunities Trust IX-A,

Plaintiff,

v. No. 25-cv-00380 MLG/JFR

ESTATE OF JAMES E. LOWRY; ESTATE OF
WILMA M. LOWRY; REBECCA ANN LOWRY;
UNKNOWN HEIRS, DEVISEES, AND LEGATEES
OF THE ESTATE OF JAMES E. LOWRY; and
UNKNOWN HEIRS, DEVISEES, AND LEGATEES
OF THE ESTATE OF WILMA M. LOWRY,

Defendants.

# MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on *Plaintiff's Motion for Default Judgment Seeking to Foreclose on Real Estate* ("*Motion*"), filed November 3, 2025, by Plaintiff Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust IX-A ("Plaintiff"). Doc. 11. Defendants have neither appeared nor responded.

The undersigned, having reviewed the record and relevant law, **RECOMMENDS** that Plaintiff's *Motion* (Doc. 11) be **GRANTED**. Specifically, the undersigned recommends: (1) entering default judgment against (a) the Estate of James E. Lowry (Deceased), (b) the Estate of Wilma M. Lowry (Deceased), (c) the Unknown Heirs, Devisees, and Legatees of James E.

[1] In accordance with 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990), United States District Judge Matthew L. Garcia referred this matter to the undersigned on June 22, 2026, to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition. Doc. 15.

Lowry, and (d) the Unknown Heirs, Devisees, and Legatees of Wilma M. Lowry; (2) awarding *in rem* judgment in the amount of $336,291.00, plus an additional $13.38 per day in interest from the date of September 12, 2025, forward; and (3) appointing a special master to conduct a foreclosure sale.

## I. <u>FACTUAL BACKGROUND</u>

The facts as set forth below are drawn from the undisputed facts Plaintiff asserted in its Complaint for Foreclosure on Reverse Mortgage ("Complaint") and the supporting exhibits attached thereto. *See Burlington N. R.R. v. Huddleston*, 94 F.3d 1413, 1415 (10th Cir. 1996) ("By failing to submit an answer or other pleading denying the factual allegations of Plaintiff's complaint, Defendant admitted those allegations, thus placing no further burden upon Plaintiff to prove its case factually.").

This suit regards the property at 433 Fontana Place NE, Albuquerque, NM 87108 ("Property"), Doc. 1 ¶ 10, which is legally described as:

> Lot numbered Nineteen (19) in Block numbered Eight (8) of the Broadmoor Addition, City of Albuquerque, New Mexico, as the same is shown and designated on the Plat, filed in the Office of the County Clerk of Bernalillo County, New Mexico, on September 1, 1945, recorded in Plat Book Cl, Page 168.

Doc. 1-3 at 9.

On March 24, 2003, for good and valuable consideration, James E. Lowry and Wilma M. Lowry (collectively, "Lowrys") executed an Adjustable Rate Note (Home Equity Conversion) ("Note") (Doc. 1-2) in favor of Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), evidencing a debt in the original principal sum of $232,344.00 with interest at an adjustable rate, initially 2.6600% and never exceeding 12.6600%. Doc. 1 ¶ 15. The original holder of the Note, Wells Fargo, indorsed it in blank. *Id.* ¶ 17 (citing Doc. 1-2 at 3-4).

To secure payment of the Note, the Lowrys contemporaneously executed a corresponding Adjustable Rate Home Equity Conversion Mortgage ("Mortgage") (Doc. 1-3) which was recorded on March 31, 2003, as Instrument No. 2003051577 in the Official Records of Bernalillo County, New Mexico. *Id.* ¶ 16.

Of the various events constituting default under the terms of the Note and Mortgage, the one relevant here is the acceleration clause "requir[ing] immediate payment in full of all outstanding principal and accrued interest" when "[a] Borrower dies and the Property is not the principal residence of at least one surviving Borrower." Doc. 1-2 ¶ 7(A); Doc. 1-3 ¶ 9(a)(i). James E. Lowry passed away on or about March 4, 2016, Doc. 1 ¶ 24 (citing Doc. 1-6), and Wilma M. Lowry passed away on or about July 6, 2020, *id.* ¶ 25 (citing Doc. 1-7).

The Lowrys died intestate, without any probate proceeding. *Id.* ¶ 6. Rebecca Ann Lowry is the only identified surviving heir. *Id.* ¶ 5. "Notice of default and acceleration were provided prior to initiation of this foreclosure action," *id.* ¶ 29, and "neither Borrowers nor any of their respective successors have cured the outstanding default by paying off the balance of the loan obligation," *id.* ¶ 30.

Before the initiation of this lawsuit, Plaintiff's counsel obtained possession of the Note indorsed in blank. Doc. 1-4 ¶ 3. Moreover, all rights in the Mortgage were assigned to Plaintiff on January 14, 2025, which was perfected upon the recording of the assignment with the county clerk on January 27, 2025. *See* Doc. 1-5 at 3.

## II. PROCEDURAL BACKGROUND

Plaintiff filed its Complaint on April 21, 2025. Doc. 1. Therein, Plaintiff raised two counts: (1) breach of note, *see id.* ¶¶ 27-33; and (2) foreclosure on mortgage, *see id.* ¶¶ 34-42.

For both claims, Plaintiff seeks, *inter alia*, an *in rem* judgment to be satisfied through a court-ordered foreclosure and sale conducted by a special master. *See id.* ¶¶ 33, 43.

On May 9, 2025, Rebecca Ann Lowry signed the notarized Disclaimer of Interest, which, *inter alia*, disclaimed any interest in the Property, waived service, and consented to entry of an *in rem* judgment against the Property. Doc. 5-1. Plaintiff filed this disclaimer on the record on May 21, 2025. Doc. 5. In the Notice of Disclaimer of Interest for Defendant Rebecca Ann Lowry, Plaintiff explained that since "nothing other than in rem relief is pursued against Defendant Rebecca Ann Lowry, this disclaimer of interest fully resolves the foreclosure claim [Plaintiff] has asserted against her." *Id.* at 1-2.

On May 21, 2025, Plaintiff filed a *Motion for Order for Service of Process by Publication in a Newspaper*, Doc. 6, which the Court granted the following day, Doc. 7. Accordingly, service was effectuated by publication in the Albuquerque Journal for three consecutive weeks, with the publication cycle concluding on July 5, 2025. Doc. 8; *see also* Doc. 9 ¶¶ 2-5.

On August 13, 2025, Plaintiff filed a Praecipe requesting the Clerk's entry of default. Doc. 9. On August 14, 2025, the Clerk entered default against: (a) the Estate of James E. Lowry; (b) the Estate of Wilma M. Lowry; (c) the Unknown Heirs, Devisees, and Legatees of the Estate of James E. Lowry; and (d) the Unknown Heirs, Devisees, and Legatees of the Estate of Wilma M. Lowry. Doc. 10.

On November 3, 2025, Plaintiff filed the present *Motion* seeking default judgment[2] "against all the named Defendants besides Rebecca Ann Lowry, . . . specifically because [she] executed a disclaimer of interest disclaiming any interest in the real estate at issue and consenting to entry of an in rem judgment against the real estate at issue." Doc. 11 at 1-2 (citing

[2] But "[t]o the extent that any of the Defendants cure their default," the *Motion* was "alternatively submitted as a motion for summary judgment pursuant to Fed. R. Civ. P. 56." Doc. 11 at 1 n.1.

Doc. 5). No Defendant or third party has responded to the *Motion*, and Plaintiff filed a Notice of Completion of Briefing on November 21, 2025. Doc. 14. To date, none of the defaulting Defendants have answered or appeared.

## III. LEGAL STANDARDS

### A. Jurisdiction

A court must have jurisdiction over both the subject matter and the parties. *Ins. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982).

#### 1. Diversity Jurisdiction and the *Erie* Doctrine

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). The two statutory bases for federal subject matter jurisdiction are federal question jurisdiction under 28 U.S.C. § 1331, and diversity jurisdiction under 28 U.S.C. § 1332. Pertinent here, diversity jurisdiction requires that: (1) the parties have complete diversity of citizenship (that is, no plaintiff is a citizen of the same state as any defendant, *see Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806)); and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a).

Under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court." *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007). Here, the contracts were made in and related to real property in New Mexico.[3] *See* Doc. 1-3 at 1, 9. Further, the Mortgage contains a "Governing Law" clause which states that "[t]his Security Instrument shall be

[3] The Court undertakes this brief analysis within the Legal Standards section because it informs many of the standards set forth below.

governed by Federal law and the law of the jurisdiction in which the Property is located." *Id.* ¶ 17. For these reasons, New Mexico is the forum state. *See Erie*, 304 U.S. at 78.

### 2. **Personal Jurisdiction**

To establish personal jurisdiction in a diversity action, a plaintiff must show that: (1) "jurisdiction is proper under the laws of the forum state," and (2) "the exercise of jurisdiction would not offend due process." *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). "Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served." *Okla. Radio Assocs. v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992).

## B. **Standing**

Article III of the U.S. Constitution grants federal courts jurisdiction only over cases and controversies. U.S. CONST. art. III, § 2, cl. 1. "To satisfy Article III's justiciability requirements, (1) a plaintiff must have standing, (2) their claims must not have become moot, and (3) their case must be ripe for review." *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 108 (10th Cir. 2024) (citing *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 159, 171 & n.3 (1970) (Brennan, J., concurring and dissenting)).

"A plaintiff must establish standing at the time of filing and maintain it throughout litigation." *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 84 (2026) (Barrett & Kagan, JJ., concurring). Standing requires showing: "(1) an injury in fact that is both concrete and particularized as well as actual or imminent; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury would be redressed by a favorable decision." *Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1298 (10th Cir. 2008) (quotation marks and

citation omitted). Courts refer to these "now-familiar elements" as "injury in fact, causation, and redressability." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam).

"While Article III standing is by definition a question of federal law, state law may create the asserted legal interest upon which the federal analysis turns; indeed, '[i]f that were not so, there would not be Article III standing in most diversity cases, including run-of-the-mill contract and property disputes.'" *Bevill Co. v. Sprint/United Mgmt. Co.*, 77 F. App'x 461, 462 (10th Cir. 2003) (unpublished[4]) (quoting *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001)); *see also Deutsche Bank Nat. Tr. Co. v. Johnston*, 2016-NMSC-013, ¶ 13, 369 P.3d 1046 ("While New Mexico courts are not subject to the jurisdictional limitations imposed by Article III, . . . the standing jurisprudence in our courts has 'long been guided by the traditional federal standing analysis.'" (quoting *ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 10, 144 N.M. 471, 188 P.3d 1222)). Since the present case is a foreclosure action, the legally protected interest on which Plaintiff's Article III standing depends is defined by New Mexico's foreclosure standing rules, which were "first set forth in *Bank of New York v. Romero*, 2014-NMSC-007, 320 P.3d 1." *HSBC Bank USA, Nat'l Ass'n v. Wiles*, 2020-NMCA-035, ¶ 9, 468 P.3d 922.

In short, promissory notes and mortgages serve different functions; notes are the loan (i.e., the promise), and mortgages are "pledged security for that loan" (i.e., a lien or security interest). *Romero*, 2014-NMSC-007, ¶ 35. Likewise, promissory notes and mortgages provide different forms of remedy, but since it is well established that under New Mexico law a mortgage follows the underlying note, a "subsequent holder of the note [may] enforce the mortgage even without a formal assignment of the mortgage." *Wiles*, 2020-NMCA-035, ¶ 12. "One who holds a note secured by a mortgage has two separate and independent remedies, which he may pursue

[4] Although the Tenth Circuit does not allow citation to unpublished opinions for precedential value, unpublished opinions may be cited for persuasive value. 10th Cir. R. 32.1.

successively or concurrently; one is on the note against the person and property of the debtor, and the other is by foreclosure to enforce the mortgage lien upon his real estate." *Gonzales v. Tama*, 1988-NMSC-016, ¶ 7, 106 N.M. 737, 749 P.2d 1116.

Because a promissory note executed in exchange for a loan is a negotiable instrument, it is governed by the New Mexico Uniform Commercial Code ("UCC"). *See* NMSA 1978, § 55-3-104(a). "To effectively show a direct and concrete injury, a party seeking to enforce a promissory note must establish that it has the right to enforce the note under the [UCC]." *Los Alamos Nat'l Bank v. Velasquez*, 2019-NMCA-040, ¶ 14, 446 P.3d 1220. Section 55-3-301 of the UCC identifies three categories of persons entitled to enforce a negotiable instrument such as a note: (1) the holder of the instrument; (2) a nonholder in possession of the instrument who has the rights of a holder; and (3) a person not in possession of the instrument who is entitled to enforce it under Section 55-3-309 or 55-3-418(d). NMSA 1978, § 55-3-301; *see also Romero*, 2014-NMSC-007, ¶ 20. Pertinent here, "under the UCC, possession of a note indorsed in blank ordinarily establishes the right of a third party as the holder of that note." *BAC Home Loans Serv., LP v. Smith*, 2016-NMCA-025, ¶ 11, 366 P.3d 714; *accord* NMSA 1978, § 55-3-205(b) ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.").

**C. <u>Default Judgment</u>**

Obtaining default judgment under Rule 55 of the Federal Rules of Civil Procedure is a two-step process. First, a plaintiff must obtain the Clerk's entry of default. FED. R. CIV. P. 55(a). Second, a plaintiff must either request the Clerk to enter default judgment when the claim is for "a sum certain or a sum that can be made certain by computation," FED. R. CIV. P. 55(b)(1), or, "[i]n all other cases, . . . apply to the court for a default judgment," FED. R. CIV. P. 55(b)(2).

However, "a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Villanueva v. Acct. Discovery Sys., LLC*, 77 F. Supp. 3d 1058, 1066 (D. Colo. 2015) (quotation marks, citation, and alteration omitted). Once a defendant is found to be in default, a court "t[akes] as true all factual allegations in the complaint, except those pertaining to the amount of damages," *Archer v. Eiland*, 64 F. App'x 676, 679 (10th Cir. 2003) (unpublished), and "consider[s] whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law," *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quotation marks omitted) (quoting 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2688, at 63 (3rd ed. 1998)).

Once liability is established, the court must determine the amount of damages. *See United States v. Craighead*, 176 F. App'x 922, 925 (10th Cir. 2006) (unpublished) ("[O]nce the facts regarding [borrower]'s liability on the notes were taken as true, all the court was required to do was calculate the amounts owed on the promissory notes and the interest."). Although allegations regarding the amount of damages are not deemed admitted by default, a court may enter a default judgment for a damage award "without a hearing" if "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983). "In ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E & H Prof'l Sec. Co.*, No. 08-cv-01569, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010). However, "Rule 55 . . . does not require that the district court receive evidence on the claimed damages amount before entering a default judgment; rather, the Rule simply allows the

district court to conduct a hearing if it believes that additional investigation or evidence is necessary." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011).

**D. Attorney's Fees**

"In a diversity jurisdiction case based on state-law claims, the Court looks to state law to determine whether attorney fees are reasonable." *Wilmington Sav. Fund Soc'y, FSB v. Lucero*, No. 24-cv-01009, 2025 WL 3527087, at *4 (D.N.M. Dec. 9, 2025) (citing *Chieftain Royalty Co. v. Enervest Energy Inst. Fund XIII-A, L.P.*, 888 F.3d 455, 462 (10th Cir. 2017)). "Under New Mexico law, a court may award reasonable attorney fees and costs to a prevailing party when authorized by a contractual provision." *Id.* at *5 (citing *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, 140 N.M. 879, 890, 149 P.3d 976); *see also Gonzales*, 1988-NMSC-016, ¶ 7 ("An attorney is, of course, entitled to recover the reasonable value of his professional services as provided in the note.").

In calculating the award of attorney's fees, New Mexico follows the lodestar method. *Autovest, LLC v. Agosto*, 2021-NMCA-053, ¶ 24, 497 P.3d 642, *aff'd*, 2025-NMSC-001, 563 P.3d 811. Accordingly, courts calculate a reasonable award of attorney fees by multiplying the hours reasonably expended by a reasonable hourly rate. *Id.* ¶ 25. In doing so, courts consider:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

NMRA 16-105(A). "A court need not consider all factors or give all the factors equal weight." *Behrens v. Gateway Ct., LLC*, 2013-NMCA-097, ¶ 33, 311 P.3d 822; *see also Gonzales*, 1988-NMSC-016, ¶ 8 ("Each case must be governed by its own facts and circumstances.").

## IV. ANALYSIS

Plaintiff seeks default judgment "against all the named Defendants besides Rebecca Ann Lowry, . . . specifically because [she] executed a disclaimer of interest disclaiming any interest in the real estate at issue and consenting to entry of an in rem judgment against the real estate at issue." Doc. 11 at 1-2 (citing Doc. 5). Plaintiff "seeks only an in rem judgment against the real estate at issue and not against any defendant personally." *Id.* at 2. Thus, Plaintiff asks the Court to order the Mortgage foreclosed and appoint a special master to conduct the sale of the Property. *See id.* at 13.

The Clerk entered default on August 14, 2025, Doc. 10, thereby fulfilling the first step of the two-step default judgment process, *see* FED. R. CIV. P. 55(a). Therefore, the undersigned will proceed to the second step and consider whether entry of default judgment is appropriate. By failing to answer, the defaulting Defendants have admitted the well-pleaded factual allegations of the Complaint. *See Burlington*, 94 F.3d at 1415.

### A. Plaintiff Has Shown Jurisdiction Exists

Plaintiff has met its burden in showing that the Court has subject matter jurisdiction on the basis of diversity of citizenship. *See* 28 U.S.C. § 1332. Plaintiff, as trustee, is a citizen of Delaware. Doc. 1 ¶ 11 ("[Plaintiff] is a Delaware corporation with its principal place of business in Delaware."); *see Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016) ("[W]hen a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes."); 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a

citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ."). None of the Defendants are Delaware citizens. The Lowrys' estates are deemed citizens of New Mexico because the Lowrys were domiciled in New Mexico at the time of their deaths. Doc. 1 ¶¶ 2-3; *see* 28 U.S.C. § 1332(c)(2). The only identified heir is Rebecca Ann Lowry, who is a citizen of New Mexico. *See* Doc. 5-1 at 2. Lastly, because the Unknown Heirs, Devisees, and Legatees are "defendants sued under fictitious names," their citizenship is disregarded. 28 U.S.C. § 1441(b)(1). Thus, there is complete diversity between the parties. As to the amount in controversy requirement, the $288,404.03 unpaid principal sum clearly exceeds $75,000.00. *See* Doc. 1 ¶ 31.

Plaintiff has also demonstrated that personal jurisdiction exists. *See Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008) ("[A] default judgment in a civil case is void if there is no personal jurisdiction over the defendant." (alteration in original) (quotation marks and citation omitted)). This requirement is particularly significant in cases such as this one because the Borrowers are deceased, and under New Mexico law, "heirs . . . whether known or unknown, h[o]ld legal title immediately upon [a decedent's] death." *BOKF, N.A. v. Unknown Heirs of Pacheco*, 2025-NMSC-029, ¶ 24, 578 P.3d 1057 (citing NMSA 1978, § 45-3-101(B)(3) (2011)). On May 9, 2025, Rebecca Ann Lowry executed a Disclaimer of Interest, Doc. 5-1, which "waive[d] any further notice or service of filings and pleadings in this proceeding," Doc. 5 at 2. Such a waiver is sufficient under FED. R. CIV. P. 4(k)(1)(A). Moreover, service on defaulting Defendants was proper. With leave of the Court, Doc. 7, and in accordance with FED. R. CIV. P. 4(e)(1) and NMRA 1-004(K)(4), Plaintiff effectuated service by publication in the Albuquerque Journal "for three consecutive weeks with the cycle of publication concluding on July 5, 2025," Doc. 8 at 2. This procedure comported with due

process. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 317 (1950) (approving service by publication "where it is not reasonably possible or practicable to give more adequate warning.").

Lastly, Plaintiff has demonstrated that the Court has *in rem* jurisdiction over the Property, since it is located in the State of New Mexico. Doc. 1 ¶ 10.

**B. Plaintiff Has Shown It Has Standing**

As previously noted, *see supra* Section III.B, Plaintiff's Article III standing and the merits of its foreclosure claim largely turn on the same showing.

Plaintiff has demonstrated the right to enforce the Note under the UCC by attaching a copy of the signed[5] Note, indorsed in blank, to its Complaint. Doc. 1-2; *accord Bank of N.Y. Mellon*, 2019-NMCA-053, ¶ 10, 448 P.3d 625 ("A plaintiff may show it is the holder of a note and satisfy the requirements of standing by attaching a note indorsed in blank to its complaint."). Thus, Plaintiff has demonstrated a direct and concrete injury under New Mexico case law. *See Los Alamos Nat'l Bank*, 2019-NMCA-040, ¶ 14. Because the right to foreclose the Mortgage follows the right to enforce the Note, Plaintiff need not separately prove assignment of the Mortgage. *Wiles*, 2020-NMCA-035, ¶ 12. Nevertheless, the chain of recorded assignments shows that all rights in the Mortgage were assigned to Plaintiff on January 14, 2025. Doc. 1-5 at 3. When Plaintiff acquired its interest in the Note and Mortgage, it acquired the rights of the original Mortgagee, including the original mortgagee's priority under the "first in time, first in right" principle. *See* NMSA 1978, § 55-3-203(b) ("Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the

[5] Under New Mexico law, courts "begin with a presumption that an indorsement valid on its face is authorized and otherwise proper." *OneMain Fin. Grp., LLC v. Pennington*, No. A-1-CA-40608, 2024 WL 841437, at *6 (N.M. Ct. App. Feb. 28, 2024) (citing NMSA 1978, § 55-3-308(a)), *cert. denied*, 2024-NMCERT-005, 549 P.3d 516.

instrument, including any right as a holder in due course . . . ."); *MacAron v. Assocs. Cap. Servs. Corp.*, 1987-NMCA-005, ¶ 7, 105 N.M. 380, 733 P.2d 11 ("The mortgagee's security interest generally has priority over subsequent claims or liens attaching to the property."). No other party or third party has come forward with evidentiary facts which would suggest that any interest in the Property is superior to that of Plaintiff.

Plaintiff has further shown that its injury is actual. The Affidavit of Tom French executed October 28, 2025, Doc. 11-1 at 1-4, Demand Loan Payoff statement and report issued September 11, 2025, *id.* at 5-7, and Tax and Payment History issued October 22, 2025, Doc. 11-2, reflect that the default on the amounts that Plaintiff is owed has not been cured. Therefore, Plaintiff has sufficiently demonstrated an injury-in-fact.

Plaintiff's injury can be traced to Defendants' failure to cure the Lowrys' obligation due under the Note and Mortgage, which is redressable by a decree of foreclosure and an order approving a foreclosure auction under the authority of a special master. *See Wilmington Sav. Fund Soc'y, FSB v. Hutchins*, No. CV 18-0346, 2019 WL 5295173, at *6 (D.N.M. Oct. 18, 2019), *report and recommendation adopted*, 2019 WL 6975042 (D.N.M. Dec. 20, 2019). Therefore, Plaintiff has adequately pled the requirements of Article III standing.

### C. Entry of Default Judgment Is Appropriate

As set forth above, Plaintiff's Complaint sets forth "unchallenged facts [that] constitute a legitimate cause of action . . . ." *Bixler*, 596 F.3d at 762 (quotation marks and citation omitted). In sum, Plaintiff's Complaint establishes that: (1) the Lowrys executed the presumptively valid Note and corresponding Mortgage on March 24, 2003, *see* Doc. 1 ¶¶ 15-16; (2) before filing suit, Plaintiff possessed the original Note, indorsed in blank, and had been assigned the Mortgage, *id.* ¶¶ 17, 19-20; (3) the entire debt became immediately due and payable when Wilma M. Lowry,

the last surviving Borrower, died on July 6, 2020, and the Property was therefore no longer the principal residence of any surviving Borrower, *id.* ¶¶ 22, 24-26; (4) neither Defendants nor anyone acting on their behalf has paid the amount due and owing, *id.* ¶ 30. Moreover, since filing suit, these conditions remain unchanged and no party or third party has demonstrated an interest in the Property superior to Plaintiff's. *See MacAron*, 1987-NMCA-005, ¶ 7.

### 1. An *In Rem* Judgment Award Is Calculable and Appropriate

Having concluded that entry of default judgment is appropriate, the undersigned must now determine the amount of awardable damages. *See Craighead*, 176 F. App'x at 925. The Court may enter default judgment for damages "without a hearing" since the amounts claimed are "capable of mathematical calculation," *Venable*, 721 F.2d at 300, based upon the detailed affidavits and documentary evidence, *see Seme*, 2010 WL 1553786, at *11. Excluding attorney's fees and costs, there is currently due to Plaintiff $318,797.30, broken down as follows:

| | |
|---|---|
| 1. Unpaid Principal Balance: | $288,404.03 |
| 2. Interest Accrued through September 11, 2025: | $4,107.25 |
| 3. Tax Payments: | $21,728.00 |
| 4. Property Preservation and Inspection Expenses: | $3,413.83 |
| 5. Lender Placed Insurance: | $644.19 |
| 6. Appraisal Expenses: | $500.00 |

Doc. 11-1 ¶ 10; Doc. 11 ¶ 14. Additionally, interest has continued to accrue at a rate of $13.38 per day from September 12, 2025, forward. Doc. 11-1 ¶ 12. The undersigned recommends entering an *in rem* judgment including these amounts, plus $17,493.70 in attorney's fees, costs, and resulting New Mexico Gross Receipts Tax ("NMGRT"). As indicated immediately below, each of these amounts is authorized by the Note (Doc. 1-2) and Mortgage (Doc. 1-3).

*Loan Debt (Principal and Interest):* The unpaid principal ($288,404.03) and accrued interest ($4,107.25) are the main debt that the Note evidences and the Mortgage secures. *See* Doc. 1-2 ¶¶ 2, 4(A); Doc. 1-3 ¶ 1. Because the contracted interest is calculable with certainty, it

is recoverable under New Mexico law. *Lucero*, 2025 WL 3527087, at *4 ("New Mexico permits recovery of prejudgment interest pursuant to a contractual provision if that interest can be calculated with reasonable certainty."); *accord* NMSA 1978, § 56-8-3.

*Property Charges (Tax and Lender-Placed Insurance):* The tax payments ($21,728.00) and lender-placed insurance ($644.19) are "property charges" the Lowrys were obligated to pay. *See* Doc. 1-3 ¶ 2. The Mortgage authorized the Lender to advance such costs, in which case, the "amounts disbursed . . . become an additional debt of Borrower as provided for in the Loan Agreement . . . secured by this Security Instrument." *Id.* ¶ 5; *see also* Doc. 1-2 ¶ 3 (deferring to the Mortgage to "protect[] the Lender from losses which might result if Borrower defaults under this Note."). These advances are therefore outstanding debt secured by the Mortgage and recoverable in the *in rem* judgment.

*Protective Advances (Preservation, Inspection, and Appraisal):* Similarly, the property preservation and inspection expenses ($3,413.83) and the appraisal ($500.00) are protective advances the Lender made, as allowed by the Mortgage, after default to safeguard and evaluate the collateral. *See* Doc. 1-3 ¶¶ 5-6; *see also* Doc. 1-2 ¶ 3. Therefore, these advances are also outstanding debt secured by the Mortgage and recoverable in the *in rem* judgment.

*Already-Incurred Attorney Fees:* The Note and Mortgage also entitle Plaintiff to the reasonable attorney's fees associated with enforcement, *see* Doc. 1-2 ¶ 7(C); Doc. 1-3 ¶ 20, and New Mexico enforces such contractual fee provisions, *see N.M. Indirect Purchasers*, 2007-NMCA-007, ¶ 19. Applying the lodestar method, the undersigned finds the requested fees reasonable. *See Autovest*, 2021-NMCA-053, ¶¶ 24-25. Plaintiff has incurred $14,378.00 in attorney fees and $1,096.32 in associated NMGRT, reflecting 26.2 hours billed by attorney Ryan M. Walters at the rate of $290.00 per hour and 45.2 hours by paralegal Candice N. Irlbeck (later

Candice N. Hawks) at the rate of $150.00 per hour. *See* Doc. 11-3 ¶ 5 (Declaration of Ryan M. Walters, executed October 31, 2025); *id.* at 4-23 (nine itemized invoices between February 19, 2025, and October 31, 2025). Those rates and the hours billed are reasonable given the complexity of foreclosing a loan involving deceased borrowers, the rates customarily charged locally, and the results obtained. *See Lucero*, 2025 WL 3527087, at *5 (concisely reaching same conclusion in foreclosure case brought by the same Plaintiff); *Behrens*, 2013-NMCA-097, ¶ 33 ("A court need not consider all factors or give all the factors equal weight.").

*Expected Attorney's Fees*: Plaintiff also seeks an additional $1,500.00 in attorney fees which it reasonably expects to incur in this litigation, plus the resulting $114.38 in NMGRT. Doc. 11-3 ¶ 5. For the same reasons in analyzing attorney's fees already incurred, the undersigned also finds this amount reasonable. *See Wilmington Sav. Fund Soc'y, FSB v. Jaramillo*, No. 24-CV-00104, 2026 WL 1091789 , at *3-4 (D.N.M. Apr. 22, 2026) (Garcia, J.) (awarding $1,500.00 in attorney fees counsel attested plaintiff will foreseeably incur through the conclusion of litigation and $114.38 in related NMGRT); *Lucero*, 2025 WL 3527087, at *5 (awarding $2,000.00 in attorney fees plaintiff expected to incur in litigation).

*Attorney Costs*: Lastly, Plaintiff incurred a $405.00 complaint filing fee. Doc. 11-3 ¶ 7. This cost is recoverable under the Mortgage, *see* Doc. 1-3 ¶ 20, as well as 28 U.S.C. § 1920(1) and FED. R. CIV. P. 54(d)(1).

**2. Appointment of Special Master to Conduct Sale of the Property**

The relief recommended above is strictly *in rem*, as Plaintiff requests, *see* Doc. 11 at 2, in accordance with the Mortgage and Note. *See* Doc. 1-2 ¶ 10 ("Lender may enforce its rights under this Note only through sale of the Property."); Doc. 1-3 ¶ 10 ("Lender may enforce the

debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.").

To effectuate the foreclosure, the undersigned recommends that the Court appoint a special master to conduct the sale of the Property. *See Thompson v. Allen Cnty*., 115 U.S. 550, 560 (1885) ("The appointment of special masters or commissioners to make sales under decrees in chancery is the ordinary mode of that court to enforce its decrees in cases where the court has jurisdiction of the subject-matter of the suit."). The special master should conduct the sale, and provide notice of the sale by publication, in accordance with NMSA 1978, § 39-5-1, and should thereafter file a report of sale for the Court's approval. Consistent with the Mortgage, Doc. 1-3 ¶ 24, and NMSA 1978, § 39-5-18, the period of redemption should be set at one month.

## V. RECOMMENDATIONS

For the foregoing reasons, the undersigned **RECOMMENDS** that *Plaintiff's Motion for Default Judgment Seeking to Foreclose on Real Estate* (Doc. 11) be **GRANTED**. Specifically, the undersigned recommends that the Court:

1. **ENTER DEFAULT JUDGMENT** against the Estate of James E. Lowry (Deceased), the Estate of Wilma M. Lowry (Deceased), the Unknown Heirs, Devisees, and Legatees of James E. Lowry, and the Unknown Heirs, Devisees, and Legatees of Wilma M. Lowry;
2. **AWARD *IN REM* JUDGMENT** in the amount of $336,291.00—plus an additional $13.38 per day in interest from the date of September 12, 2025, forward—broken down as follows:
    a. $288,404.03 in unpaid principal balance,
    b. $4,107.25 in interest accrued from July 6, 2020, through September 11, 2025,
    c. $21,728.00 in tax payments,

d. $3,413.83 in property preservation and inspection expenses,

e. $644.19 in lender-placed insurance,

f. $500.00 in appraisal expenses,

g. $14,378.00 in attorney's fees already incurred,

h. $1,096.32 in NMGRT for attorney's fees already incurred,

i. $1,500.00 in attorney's fees expected to be incurred,

j. $114.38 in NMGRT for attorney's fees to be incurred, and

k. $405.00 in filing fees; and

3. **APPOINT** a special master to conduct the foreclosure sale to satisfy the above judgment, in accordance with NMSA 1978, § 39-5-1, with a one-month period of redemption.

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**